# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIKE KIRKPATRICK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-14-349-F |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Mike Kirkpatrick brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. Upon review of

---

[1] Plaintiff's Brief (Doc. No. 11) refers only to the DIB application, while the Complaint (Doc. No. 1) alleges error in the denial of both the DIB and SSI applications. The undersigned's analysis would apply equally to, and would require affirmance of, the Commissioner's denial of Plaintiff's SSI application.

the administrative record (Doc. No. 9)[2] and the arguments and authorities submitted by the parties, the undersigned recommends that the Commissioner's decision be affirmed.

## PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI benefits on July 27, 2010. R. 139-46, 160-62. Plaintiff alleged that he was disabled as a result of blindness in his left eye, depression, prostate problems, emphysema, chronic obstructive pulmonary disease, and bipolar disorder. R. 173, 182, 211. Plaintiff alleged an amended onset date of December 1, 2004. R. 40. Following denial of his application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on September 12, 2012. R. 37-53, 61-68, 71-76. The ALJ issued an unfavorable decision on October 5, 2012. R. 17-36. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-5; *see also* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. R. 22; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had

---

[2] Citations to the administrative record are as "R. __," using the pagination assigned by the SSA. Citations to other filings use the pagination assigned by the Court's electronic filing system.

the severe impairments of "left eye vision loss[,] chronic obstructive pulmonary disease (COPD), depression[,] and drug and alcohol abuse."  R. 22; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 23; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments.  R. 24-30; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The ALJ found that Plaintiff had the RFC to perform "light work," subject to additional limitations that:

> due to left eye blindness he is not able to perform extended reading of fine print.  He should avoid extended exposure to unprotected heights or dangerous machinery.  He could occasionally stoop, kneel, and crouch due to [the] bag he wears to capture urine.

R. 24; *see* 20 C.F.R. §§ 404.1567(b) (defining "light work"), 416.967(b) (same).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  R. 30; *see* 20 C.F.R. §§ 404.1565, 416.965.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform.  Taking into consideration the testimony of a vocational expert ("VE") regarding the degree of erosion to Plaintiff's unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as night cleaner, packing line worker, and small parts assembler, all of which offer jobs that exist in significant numbers in the national

economy. R. 30-31; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On that basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 1, 2004, though the date of the decision. R. 31; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the ALJ's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff contends that substantial evidence does not support the ALJ's determination that Plaintiff was not disabled. Specifically, Plaintiff argues that the ALJ, in determining Plaintiff's RFC, did not conduct a function-by-function assessment of Plaintiff's severe impairments as required by Social Security Rulings 96-8p and 96-9p, and did not include in the RFC functional limitations caused by the following impairments: COPD (Pl.'s Br., Doc. No. 11, at 4, 5, 6-8); vision loss (Pl.'s Br. at 4-8); frequent, painful urination and use of a catheter (Pl.'s Br. at 8-12); and depression (Pl.'s Br. at 12). *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996); SSR 96-9p, 1996 WL 374185 (July 2, 1996). The undersigned will address the specific impairments and alleged limitations in turn.

*A. COPD*

Plaintiff argues that because the ALJ found that Plaintiff has the severe impairment of COPD, the RFC analysis should have included an assessment of Plaintiff's "ability to be exposed to environmental pollutants such as fumes, cleaning fluids, dusts, odors, gases, extreme heat or cold and/or poor ventilation." Pl.'s Br. at 4. Plaintiff does not, however, point to record evidence showing that any of these limitations were experienced by Plaintiff as a result of his COPD. *See* Pl.'s Br. at 4, 5, 7-8.

Upon review of the record, the only evidence of COPD-related limitations the undersigned has found is Plaintiff's own hearing testimony and his self-reports to the SSA or medical providers that his breathing problems prevent him from engaging in strenuous activity or walking more than short distances. *See* R. 41 (testimony that

"COPD makes it short of breath—where I can't really do anything strenuous cause of, you know, shortness of breath"); R. 190 (function report stating that emphysema causes him to be "unable to breathe [well], walk or do strenuous work"); R. 297 (complaint to Traci Carney, DO, that he cannot walk one to two blocks without becoming short of breath); *see also* R. 500 (complaint to mental health provider that health problems interfere with employment); R. 513 (same). The ALJ recognized these reports in his decision and properly included them in his RFC analysis. *See* R. 25-28 ("He reported [emphysema/COPD] makes it hard to get or keep a job."; "He is able to walk two to three blocks and then needs to rest for three to four minutes."; "He testified he is unable to work because of . . . shortness of breath . . . ."; "He has breathing problems."; "He testified . . . COPD . . . make[s] it [tough]."; "His chief complaints [to Dr. Carney included]. . . emphysema.").

In his RFC analysis, the ALJ discussed medical records pertinent to Plaintiff's COPD. The ALJ noted the consultative physical evaluation done by Dr. Carney on June 11, 2011, in which Dr. Carney found that, though Plaintiff had a history of COPD and had "coarse breath sounds" upon examination, his "[c]hest was symmetrical with equal expansion bilaterally with no rales, rhonchi, or wheezes noted." R. 27, 28 (citing Ex. 7F); *see* R. 298. The ALJ further noted that medical notes of May 8, 2012, showed that Plaintiff's "lung[s] were clear to auscultation bilaterally." R. 28 (citing Ex. 18F); *see* R. 592. Other medical records are consistent with those cited by the ALJ. *See* R. 590 (Jan. 16, 2012 record indicating lungs clear to auscultation bilaterally); R. 405 (Feb. 2, 2012 record indicating no respiratory distress); R. 484 (Feb. 16, 2012 record indicating

6

Plaintiff reported no respiratory problems); R. 487 (Feb. 18, 2012 record indicating respiratory effort was within normal limits); R. 491-95 (Mar. 1, 2012 record indicating Plaintiff reported shortness of breath but that respiratory effort and auscultation of lungs were within normal limits). This evidence, including Plaintiff's testimony and statements discussed above, supports the ALJ's RFC assessment that Plaintiff can only perform "light work," subject to additional limitations. R. 24; *see* 20 C.F.R. §§ 404.1567(b) (defining "light work"), 416.967(b) (same).

It was Plaintiff's burden to provide evidence of the limitations caused by his alleged impairments. *See* 20 C.F.R. §§ 404.1512(c) (requiring that a claimant "inform us about or submit all evidence known to you that relates to whether or not you are . . . disabled"), 416.912(c) (same); *id.* §§ 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."), 416.945(a)(3) (same). Absent support in the record for the additional limitations now claimed by Plaintiff on appeal, the ALJ did not err by failing to include those limitations in the RFC assessment. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (finding that claimant's argument that ALJ improperly failed to take into account claimant's inability to perform repetitive movements with his hands was "belied by the medical record," which did not show that claimant's limitations included such an inability, and, "[t]herefore, the ALJ did not err by failing to include this alleged limitation in his RFC assessment"); *Adams v. Colvin*, 553 F. App'x 811, 815 (10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC."); *Pace v. Barnhart*, 74 F. App'x 877, 879 (10th Cir. 2003) (finding ALJ

7

did not err in not including limitation in RFC assessment when there was "no evidence in the record supporting [claimant's] claim" of such limitation). *See generally* SSR 96-8p, 1996 WL 374184, at *1 ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the [ALJ] must consider the individual to have no limitation or restriction with respect to that functional capacity.").

Plaintiff's argument that the ALJ did not conduct a proper RFC assessment with regard to Plaintiff's COPD is unavailing. Plaintiff has not shown that the ALJ's RFC assessment was unsupported by substantial evidence. Nor has Plaintiff shown that the erred by failing to include in the RFC any alleged limitation whose presence was not supported by the record. *See Qualls*, 206 F.3d at 1372.[3]

B. *Vision Loss*

Plaintiff argues that the ALJ's RFC analysis did not include all limitations caused by his left-eye blindness. Pl.'s Br. at 4-8. Plaintiff testified at the hearing that being blind in his left eye affected his peripheral vision and his depth perception. Pl.'s Br. at 4 (citing R. 42). Plaintiff further asserts on appeal that his vision loss causes additional

---

[3] Plaintiff further asserts that, because the ALJ's hypothetical questions to the VE did not include "something like 'avoid concentrated exposure to environmental irritants' and 'working in a temperature controlled environment of between 60 degrees and 80 degrees,'" those questions did not "relate with precision" Plaintiff's breathing impairments. Pl.'s Br. at 6-8. However, it is well-settled that inquiries to a VE "must include . . . only . . . those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). As discussed above, there is inadequate evidence in the record to support the addition of those environmental limitations now claimed by Plaintiff on appeal. Therefore, the ALJ was not required to include them in his hypothetical to the VE.

limitations in the areas of production or pace, visual field, ability to see things quickly, and ability to avoid fast-moving people. Pl.'s Br. at 4-5. The undersigned addresses these two sets of alleged limitations separately.

As to the latter alleged limitations—regarding production and pace, visual field, ability to see things quickly, and ability to avoid fast-moving people—Plaintiff does not cite any record evidence to support the suggestion that he experiences such restrictions. *See* Pl.'s Br. at 4-8. In evaluating the extent of Plaintiff's visual limitations and adopting certain limitations in the RFC, the ALJ considered the evidence of record regarding Plaintiff's vision loss, none of which supports the additional visual limitations Plaintiff asserts. *See* R. 23-28. Specifically, the ALJ discussed Plaintiff's function report in which he stated that "[h]e wears glasses for small detailed things or reading," and Plaintiff's statement to Beth Jeffries, PhD, that "his vision was corrected with reading glasses." R. 25, 26 (citing Exs. 8E, 4F); *see* R. 196, 278. The ALJ also discussed the visual exam conducted by Dr. Carney, which indicated that Plaintiff's "visual acuity using the Snellen eye chart was without lenses right 20/20, left blind, bilateral blind in left" and "[h]e did not wear corrective lenses." R. 27, 28 (citing Ex. 7F); *see* R. 298. The ALJ next discussed the opinions of the state agency medical consultants who evaluated Plaintiff's claims and concluded that he retained the RFC for light work. R. 29 (citing Exs. 5F, 6F, 8F, 12F-14F). Though not specifically mentioned by the ALJ, the undersigned notes that the state agency medical consultant who completed a Physical Residual Functional Capacity Assessment on September 7, 2011, diagnosed Plaintiff with left eye blindness but found that no additional visual limitations were established. R.

384-91 (Ex. 14F); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

The ALJ also considered the opinion evidence that Plaintiff had "not had any permanent limitations or restrictions placed on his ability to perform basic work activities by any treating or examining physicians" as well as Plaintiff's description of "daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations," and included in his decision an extensive list of activities arguably inconsistent with the additional visual limitations now suggested by Plaintiff. R. 29. The ALJ concluded that Plaintiff's "statement concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 26. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

After examining the record as a whole, the undersigned is persuaded that—excepting the issues of peripheral vision and depth perception, discussed below—the ALJ's RFC analysis included all functional limitations caused by Plaintiff's left-eye blindness that were supported by the record. The ALJ did not err by not including in the RFC assessment limitations that were not supported by the record. *See Qualls*, 206 F.3d at 1372-73.

Regarding peripheral vision and depth perception, Plaintiff does not point to, and the undersigned has not found, medical opinion evidence specifically addressing such limitations. Plaintiff did testify that his left-eye blindness "[g]reatly" affected his peripheral vision and depth perception. R. 42. Further, the fact of such limitations is an obvious result of being blind in one eye. Therefore, the undersigned will separately address whether the failure to expressly include these limitations in the RFC was reversible error.

The ALJ in his decision noted that Plaintiff was blind in his left eye and recited Plaintiff's testimony that such condition affected Plaintiff's peripheral vision and depth perception. R. 25 ("In 1991 or 1992 [Plaintiff] was blind in his left eye and lost complete vision in 1995 and his peripheral [vision] and depth perception [are] limited."); *see* R. 42. In the RFC, the ALJ stated that Plaintiff was blind in the left eye, but did not expressly delineate that such condition would limit Plaintiff's peripheral vision and depth perception. *See* R. 24. In the hypothetical to the VE that the ALJ relied on for his step-five conclusion, the ALJ included the same limitations as ultimately were incorporated into the RFC but *did* delineate that the individual's left-eye blindness would preclude occupations requiring peripheral vision. R. 50-51.

The Court need not decide if the ALJ's failure to expressly include lack of peripheral vision and depth perception in the RFC, or the failure to expressly include lack of depth perception in the hypothetical to the VE, was error. Where an ALJ fails to include a particular limitation in a claimant's RFC, but one or more occupations identified by the VE as existing in significant numbers would *not* be precluded by the

additional limitation, the ALJ's error is harmless. *See Lara v. Colvin*, No. CIV-12-1249-L, 2014 WL 37746, at *1, *4 (W.D. Okla. Jan. 6, 2014) (holding that ALJ's failure to include limitation to relating with supervisors and peers on a superficial basis in RFC was harmless error where one of the occupations identified by the VE did not require interaction on more than a superficial basis); *cf. Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (holding that ALJ's failure to include all limitations from RFC in hypothetical question to VE was harmless when two of the four occupations identified by the VE were consistent with RFC); *Cochran v. Colvin*, No. CIV-13-1238-F, 2015 WL 1308381, at *7-8 (W.D. Okla. Mar. 23, 2015) (holding that ALJ's reliance on VE testimony regarding occupation that conflicted with claimant's RFC was harmless error when two remaining occupations did not conflict and provided substantial evidence supporting the ALJ's determination that suitable jobs existed in significant numbers). *See generally Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (indicating that harmless-error analysis may be appropriate where ALJ did not properly consider evidence but "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal quotation marks omitted)).

Here, Plaintiff asserts that two of the three occupations identified by the VE require some degree of depth perception but does not assert the same of the third occupation—night cleaner. *See* Pl.'s Br. at 7-8. Examination of the *Dictionary of Occupational Titles* entry for this position confirms that "night cleaner" has no requirement of peripheral vision or depth perception. *Dictionary of Occupational Titles*

323.687-014 (Cleaner, Housekeeper), 1991 WL 672783 (4th rev. ed. 1991). The VE testified that this occupation offers 6000 jobs existing in Oklahoma and 800,000 in the national economy. R. 30, 51. Because this occupation alone would support the ALJ's step-five conclusion, reversal is not required even if it is assumed that the ALJ erred by not specifying peripheral vision and depth perception limitations in the RFC.[4] *See, e.g., Cochran*, 2015 WL 1308381, at *8 (finding, after disregarding one occupation cited by the ALJ, that a total of 2935 combined jobs in Oklahoma and 256,000 combined jobs in the national economy offered suitable jobs existing in significant numbers in the national economy).

C. *Frequent, Painful Urination and Use of a Catheter*

After experiencing intermittent blood in his urine, Plaintiff was referred by the Good Shepherd Community Clinic to OU Medical Center, where on July 18, 2011, an exam revealed a bladder mass and Plaintiff was diagnosed with cancer of the bladder. R. 305-07. Plaintiff underwent an initial transurethral resection of bladder tumor ("TURBT") on July 22, 2011, then additional TURBTs on August 23, 2011, and

---

[4] Plaintiff also argues that the ALJ erred by using the word "extended" in describing in the RFC the amount of "reading of fine print" that Plaintiff can perform, as well as the amount of "exposure to unprotected heights or dangerous machinery" that Plaintiff can tolerate. Pl.'s Br. at 6. Plaintiff objects to this usage because "it is not a proper social security term." *Id.* Of note, the hypothetical question to the VE that was relied on by the ALJ included "no" (as opposed to extended) exposure to unprotected heights or dangerous machinery. R. 50. In any event, Plaintiff does not develop this argument and specifically does not establish that the ALJ's findings were unsupported by substantial evidence. Reversal on this basis is not warranted. *See Mays v. Colvin*, 739 F.3d 569, 576 & n. 4 (10th Cir. 2014) (declining to address argument not adequately developed or briefed).

December 13, 2011. R. 339-42 (July 22, 2011 operative report), 360-64 (Aug. 23, 2011 operative report), 392-95 (Dec. 13, 2011 operative report); *see also* R. 404 (history as of February 2, 2012). Because of the risk of cancer progression and lack of response to treatment, Plaintiff underwent a radical cystectomy with ileal conduit formation[5] on February 3, 2012. R. 411; *see generally* R. 400-81 (medical records dated February 2-12, 2012, regarding Plaintiff's cystectomy and subsequent hospital stay). Plaintiff's hearing testimony indicated that the cystectomy was successful and that he was clear of cancer as of the date of the hearing. R. 42-43. The undersigned has found no medical records indicating a return of cancer after the cystectomy. *See* R. 482-95 (follow up visits post-cystectomy dated Feb. 16, 2012-Mar. 1, 2012); R. 592 (May 8, 2012 medical record); *see also* R. 25 (ALJ noting Plaintiff "is still clear of cancer").

Plaintiff acknowledges that the ALJ's RFC analysis included a limitation to only occasional stooping, kneeling, and crouching due to the "bag [Plaintiff] wears to capture urine." Pl.'s Br. at 8 (citing R. 24). Plaintiff argues, though, that as relates to Plaintiff's bladder cancer and surgeries, the ALJ should have included the additional limitations of frequent and painful urination and the use of a catheter. Pl.'s Br. at 8-9, 9-12.

This section of Plaintiff's brief is replete with misrepresentations of the record. First, Plaintiff, through his counsel Miles Mitzner, states: "The MER indicates [Plaintiff]

---

[5] A cystectomy is a surgical procedure to remove the bladder. An ileal conduit formation is a procedure in which, after the bladder is removed, the surgeon uses a piece of the patient's intestine to create a tube that runs from the patient's kidneys to his abdominal wall. A bag worn on the patient's abdomen collects the urine. Mayo Clinic, *Tests and Procedures: Cystectomy (Bladder Removal Surgery)*, http://www.mayoclinic.org/tests-procedures/cystectomy/basics/definition/prc-20009523 (last visited Aug. 22, 2015).

has 'chronic frequency dysuria and urgency.' (AR 581)." Pl.'s Br. at 8. The medical record quoted is dated July 13, 2011—prior to the discovery of Plaintiff's bladder cancer and removal of his bladder. *See* R. 581; *see also* R. 305. Given the effect of that surgery, it is disingenuous to present these pre-diagnosis and pre-cystectomy complaints as either current or ongoing. Next, Plaintiff states: "The cause is found at AR 393, the doctor says he is showing signs of Urothelial Carcinoma, which is known to naturally have the side effect of painful urination and frequency." Pl.'s Br. at 8. Aside from attempting to establish medical conditions through what is "naturally" "known," the record cited by Plaintiff's counsel is from December 13, 2011—a time during which Plaintiff was undergoing multiple TURBTs prior to the cystectomy that ultimately resolved Plaintiff's cancer. *See* R. 393.

Plaintiff next states: "And, while it is apparent that the doctors have tried pretty much everything, there continues to be pain, urinary incontinence, constipation, or leaks inside his body and his doctor has a specific discussion about the persistence of the cancer and tumors at AR 360-362." Pl.'s Br. at 8-9. The medical record cited is dated August 23, 2011, again prior to the successful cystectomy—yet Plaintiff's counsel represents that Plaintiff's pre-surgery condition continues unabated. *See* R. 360-62. The statement that "there continues to be pain, urinary incontinence, constipation, or leaks inside his body" (Pl.'s Br. at 9) is wholly unsupported by the record. Contrary to the suggestion of a current and ongoing status of "persisten[t] . . . cancer and tumors," Plaintiff himself, at the hearing, stated that he was clear of cancer. R. 43. Next, Plaintiff states: "At AR 408 the doctor discusses how his continually recurring bladder cancer has

caused unpredictable stools, urination and pain." Pl.'s Br. at 9. No such discussion occurs at page 408 of the administrative record and the undersigned has not found evidentiary support for this statement elsewhere.

Finally, Plaintiff states:

> At AR 401-402, the doctors admit in the record that "post-operatively, they noticed a high output from his JP drain, which led them to do a CT, revealing a urinoma, which is probably due to a leak from the ureteroileal anastomosis, however they failed to repair it. Accepting the fact that doctors have not been able to fix the problem, [Plaintiff] could not maintain full or part-time employment solely based upon the number of days consecutively, and over time, he spends in the hospital for bladder cancer surgeries as he has now at least seven (7) very complicated surgeries in the two years before his hearing. *Id.*

Pl.'s Br. at 9. Regarding the urinoma, the very next sentence of the quoted postoperation record reads, "Due to the fact that the patient was stable and his labs were okay, we decided to manage this conservatively." R. 402. Thereafter, the doctors "continued monitoring" the elevated creatinine in the drained fluid and the following day found the fluid creatinine to be identical to the plasma creatinine, at which point they removed the JP drain. R. 402. Thus, Plaintiff's counsel's statements that "they failed to repair it" and Plaintiff's "doctors have not been able to fix the problem" are misleading at best. Even Plaintiff's counsel's reference to "at least seven (7) very complicated surgeries" is unsupported: the record indicates that Plaintiff has undergone three TURBTs, one cystoscopy and biopsy, and one cystectomy. *See* R. 339-42, 360-64, 392-95; R. 396-99; R. 456-60. Nor does Plaintiff's counsel explain why hospitalizations for Plaintiff's bladder cancer should be presumed to continue after complete removal of the bladder and resolution of the cancer.

16

Further, multiple pages of Plaintiff's brief are devoted to arguing about limitations that might be caused by a catheter; however, Plaintiff offers no support from the record that such limitations actually impact Plaintiff. *See* Pl.'s Br. at 9-12. The undersigned notes that Plaintiff had a radical cystectomy with ileal conduit formation, which resulted in Plaintiff wearing a bag outside of his abdomen to collect urine. *See supra* note 5. This bag does not collect urine in the same manner as a catheter. *See, e.g.,* Nat'l Inst. of Diabetes & Digestive & Kidney Diseases, *Urinary Diversion*, http://www.niddk.nih.gov/health-information/health-topics/urologic-disease/urinary-diversion/Pages/facts.aspx (last visited Aug. 21, 2015). When at the hearing Plaintiff himself was asked about the restrictions caused by this condition, he stated only that "it was hard for him to bend over because the bag was in his way." *See* Pl.'s Br. at 11; R. 41, 43 ("Q: And how does [the bag] limit your activities? A: Just [INAUDIBLE] it's hard for me to bend over, or you know, have anything in contact really with my waist, or that area. It's hard for me to bend over because the thing will, you know, it's just in my way." (second alteration in original)).

In sum, Plaintiff has presented no evidence from which a reviewing court may conclude that the ALJ's RFC analysis of the limitations resulting from Plaintiff's bladder cancer, cystectomy, or ileal conduit was improper or that the ALJ's conclusion was unsupported by substantial evidence. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c). The functional limitations that were shown to be associated with these conditions were addressed by the ALJ's specification in the RFC that Plaintiff can only "occasionally stoop, kneel, and crouch due to bag he wears to capture urine." *See* R. 24. Plaintiff's

citation to instances when Plaintiff experienced frequent, painful urination *prior to* the surgery that removed his bladder and created an ileal conduit (i.e., a surgery that established a different means of urination) is insufficient to show that Plaintiff experiences frequent, painful urination *after* that surgery. Likewise, Plaintiff's argument for additional limitations that might be caused by a catheter fails for lack of evidence that Plaintiff experiences any such limitations. These assertions are rejected as misleading and altogether unpersuasive.

## D. Depression

Plaintiff's final argument is, in its entirety: "[W]here are the limitations in the RFC for the ALJ's severe mental limitation of depression? (AR 22, 24) There are none. Again, the ALJ was supposed to perform a function by function analysis and yet he didn't." Pl.'s Br. at 12. An appellate court will not consider an argument that is undeveloped and unsupported. *See Mays*, 739 F.3d at 576 (declining to consider arguments that were not adequately developed); *accord Murrell v. Shalala,* 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (noting that "perfunctory complaints" failing "to frame and develop an issue" are not "sufficient to invoke appellate review"); *Keyes–Zachary,* 695 F.3d at 1161 (declining to consider issues not adequately briefed for review).

In light of these authorities, the undersigned finds that Plaintiff has not properly presented for review any claim relating to limitations caused by depression, and such issue is waived. Even if this were not so, the ALJ discussed Plaintiff's depression and gave great weight to the opinions of two state agency psychologists who determined that Plaintiff's mental health condition did not rise to the level of a severe impairment. R. 29,

282-95, 304; *see* 20 C.F.R. §§ 404.1520(c) (stating that to qualify as severe, an impairment must "significantly limit[]" the claimant's "physical or mental ability to do basic work activities"), 416.920(c) (same). Plaintiff points to no evidence of specific limitations caused by his depression that would contradict, much less overwhelm, these opinions. *See Bowman*, 511 F.3d at 1272. Plaintiff has not shown that the ALJ's failure to assess any limitations resulting from depression was unsupported by substantial evidence.

E. Conclusion

In sum, Plaintiff does not cite a single valid opinion or record supporting any claimed limitations that the ALJ failed to consider.[6] *See* Pl.'s Br. at 3-12; *see also Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (rejecting a lack-of-substantial-evidence argument when no evidence or testimony contradicted the ALJ's conclusion that claimant retained the capacity for light work). The undersigned may not and will not reweigh the evidence on appeal. *See Bowman*, 511 F.3d at 1272. Reversal is not warranted on any of the above bases.

---

[6] Plaintiff includes in his brief the statement that "in assessing [Plaintiff's] RFC, the ALJ must consider the combined effect of all [Plaintiff's] medically determinable impairments, whether severe or not severe." Pl.'s Br. at 5 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). To the extent Plaintiff intended to present an argument that the ALJ did not consider the combined effect of Plaintiff's impairments, the undersigned finds such an argument unavailing. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) ("Finally [claimant] argues that the ALJ did not consider the combined effects of his impairments. The ALJ's opinion addresses [claimant's] various impairments, and we find nothing to suggest they were not properly considered. The ALJ did not err.").

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 7, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 24th day of August, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE